* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner DeLuca and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act, defendant-employer employing the requisite number of employees to be bound under the provisions of said Act at the time of the alleged incident.
2. The date of injury is April 12, 2005.
3. An employment relationship existed between plaintiff and defendant-employer on April 12, 2005.
4. Dollar General Risk Management was responsible for administering workers' compensation benefits for defendant-employer on April 12, 2005.
5. Plaintiff's average weekly wage is $222.02, which yields a compensation rate of $148.01.
6. Plaintiff has been treated by the following medical providers:
 a. Johnston Memorial Hospital Emergency Department;
 b. Johnston County Health Department; and
 c. Raleigh Orthopaedic Clinic — Dr. Jeffrey Kobs.
7. The parties stipulate to the following exhibits:
 a. Transcript of deposition of Dr. Jeffrey Kobs;
 b. Transcript of deposition of Mildred Peeler;
 c. Pretrial Agreement;
 d. Plaintiff's stipulated medical records;
 e. All Industrial Commission Forms; and
 f. Wage Records for weeks between May 27, 2005, and August 5, 2005.
 * * * * * * * * * * * *Page 3 
Based upon all of the competent evidence of record the Full Commission makes the following: FINDINGS OF FACT
1. Plaintiff was born on July 4, 1964. She completed the tenth grade. Plaintiff's previous employment history includes work in sales and drywall installation.
2. Plaintiff began working with defendant-employer on August 4, 2004. Plaintiff's job duties were working the cash register, unloading trucks, and stocking shelves.
3. Plaintiff suffered a compensable injury to her right shoulder on or about April 12, 2005, when some merchandise fell and struck her. Subsequently, plaintiff returned to light work with defendant-employer.
4. On or about August 25, 2005, Glen Meadows, the District Manager for defendant-employer, was conducting an investigation regarding the circumstances in which a cash register had come up short of money. Plaintiff was interviewed as part of a standard procedure. Plaintiff denied being the cause of the shortage in the register. As part of the standard investigation, plaintiff was asked if she had ever taken anything from the store without paying for it. Mr. Meadows testified that plaintiff told him she had taken three sodas from the store without paying for them. Mr. Meadows testified that plaintiff informed him that she did not have the money to pay for the drinks at the time and had intended to pay for the drinks later, but failed to do so. Plaintiff was asked if she would be willing to write out what she had told Mr. Meadows and she complied. This statement, admitted at hearing as Defendant's Exhibit 1, and which plaintiff admitted writing and signing, contained the following: "I Mary Ann Rascoe. Took three Diet Pepsi out of Drink Box without paying. I am sorry for what I done And I am willing and am paying for the 3 drinks I took." The statement further indicates that plaintiff then paid Mr. *Page 4 
Meadows for the drinks. This information was turned over to the Human Resources Department which made the decision that Mr. Meadows was to terminate plaintiff's employment for violation of company policy, namely taking merchandise from defendant-employer without paying for it. It is not defendant-employer's policy to provide any warning for such an offense, and other employees are terminated under this policy on first offenses. In the past year, Mr. Meadows terminated six other associates under the same policy, none of whom were receiving workers' compensation benefits. Mr. Meadows terminated the employment of a store manager in October of the past year for taking a single drink without paying for it.
5. Pursuant to the decision by Human Resources, plaintiff was terminated from her employment as an Associate on September 2, 2005.
6. At the hearing before the Deputy Commissioner, plaintiff testified that she had taken three drinks, but had done so under an informal custom instituted by a store manager, in which the manager would pay for drinks for employees on days that trucks needed to be unloaded. Plaintiff testified that she explained this to Mr. Meadows during the August 25, 2005 meeting. While plaintiff testified that the manager paid for the drinks, plaintiff also testified that the reason she admitted taking the drinks was because she was unsure whether the store manager had actually paid for the drinks. Plaintiff also testified that she may not have always marked down the drinks she took on truck day.
7. Mr. Meadows testified that he was unaware of any such custom and that if he had been informed of that custom during the meeting, he would have questioned the manager. Mr. Meadows testified that plaintiff did not mention this informal custom at the meeting where she admitted to taking drinks without paying for them. Plaintiff only mentioned this informal custom after she was told she was being terminated. *Page 5 
8. Mildred Peeler, an assistant manager at the store, testified that while the manager would buy drinks on truck days, the employees would write down the drinks that they took so the manager could pay for them. She testified that it was common knowledge that the drinks would be paid for by the manager.
9. The undersigned find that the testimony of Glen Meadows is more credible than plaintiff's recollection of the August 25, 2005 meeting. This is based in part on plaintiff's own contemporaneous handwritten statement that admits taking the drinks without paying for them and makes no mention as to whether these drinks were obtained and intended to be paid for by the manager. Even based on plaintiff's testimony, as well as that of Ms. Peeler, it was known that the drinks taken on truck days were paid for by the manager. Thus, the undersigned find as less credible plaintiff's claim that she told Mr. Meadows that she simply did not know whether her manager had paid for the drinks. The undersigned find that plaintiff was terminated from employment under defendant-employer's policy prohibiting the taking of merchandise by an employee from the store without paying for it or without a receipt to prove purchase.
10. Based upon the uncontradicted testimony of Glen Meadows, the undersigned find that the policy under which plaintiff was terminated for misconduct would apply to any non-disabled employee and was unrelated to plaintiff's shoulder injury.
11. The evidence demonstrates, and the undersigned find, that since the accident, plaintiff has been able to find employment with two other employers. While plaintiff has offered testimony that she has sought other additional employment, she presented no evidence that the failure to obtain other employment was related to her disability.
12. While plaintiff has presented some evidence that following her injury, she earned on average less than her pre-injury average weekly wage, she has failed to present sufficient *Page 6 
evidence that any reduction in earning was caused by her injury. Plaintiff has not presented any evidence that she was restricted by physicians to fewer hours or that her employer restricted her hours as a result of her injury.
13. Dr. Jeffrey Kobs, an orthopedic surgeon, testified that on March 23, 2006, he performed arthroscopic surgery on plaintiff and took plaintiff completely out of work for her work-related injury.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the undersigned concludes as follows:
 CONCLUSIONS OF LAW
1. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). On September 2, 2005, plaintiff was terminated for misconduct and fault, unrelated to her compensable injury, for which a non-disabled employee would ordinarily have been terminated by defendant-employer. Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E. 2d 397 (1996). Accordingly, plaintiff's termination constituted a constructive refusal of suitable employment. N.C. Gen. Stat. § 97-32; Id.
2. Under the Seagraves analysis, after an employer has proven that the employee's termination constitutes a constructive refusal of employment, an employee must then show that her inability to find other employment at wages comparable to those earned prior to the injury is due to the work-related disability. Seagraves v. Austin Co. of Greensboro, supra. In the present case, plaintiff did not sufficiently show that after her termination on September 2, 2005, she was *Page 7 
incapable of finding work because of her work-related injury. The evidence shows that plaintiff did find work after her termination and plaintiff has failed to show that any inability to find work or any reduction in wages was a result of her compensable injury. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russellv. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). Therefore, plaintiff failed to prove that she was disabled from employment due to the compensable injury and she is not entitled to any compensation between September 2, 2005 and March 23, 2006, when she was taken completely out of work by her doctor for her work-related injury. N.C. Gen. Stat. § 97-29; Seagraves v. Austin Co. of Greensboro, supra.
3. Defendants are required to provide plaintiff with reasonably necessary medical treatment related to her compensable shoulder injury that tends to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25, and 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing Findings of Facts and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for temporary total or partial disability compensation from September 2, 2005 to March 23, 2006 is denied. Defendants shall pay plaintiff temporary total disability compensation in the amount of $148.01 per week beginning March 23, 2006.
2. Defendants shall pay medical expenses incurred resulting from plaintiff's compensable shoulder injury so long as it tends to affect a cure and give relief or lessen plaintiff's disability.
 This the 27th day of September 2007. *Page 8 
S/______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA K. MAVRETIC COMMISSIONER
 S/______________________ PAMELA T. YOUNG COMMISSIONER